EMPIRE TRANSP. CO. v. PHILADELPHIA & R. COAL & IRON CO.

MITCHELL STEAMSHIP CO. v. SAME.

(District Court, D. Minnesota, Fifth Division. October 21, 1895.)

Nos. 43 and 44.

1. DEMURRAGE—WHEN PAYABLE—BILL OF LADING.
When the bill of lading is silent on the subject of demurrage, the acceptance of the cargo is evidence of an agreement by the consignee to pay demurrage as well as freight; and, if no time is specified for discharging, and no lay days are mentioned, the unloading must be done with reasonable diligence, according to the custom of the port.

2. SAME.
Liability for demurrage does not exist in the absence of an express contract, unless the delay is caused by the negligence or fault of the consignee.

3. SAME—STRIKE OF DOCK LABORERS.
Where the delay in unloading was caused by a general strike of dock laborers, demanding an agreement by all the dock owners of a material increase of wages, to be in force for a whole year, and who prevented by force and threats the employment of laborers willing to work at the old rates, and reasonable diligence in unloading was used by the claimant, held, that demurrage would not lie for such delay.

These were separate libels by the Empire Transportation Company and by the Mitchell Steamship Company against the Philadelphia & Reading Coal & Iron Company to recover demurrage for delay in unloading vessels.

June 30, 1894, defendant chartered the steamer Gilbert, whereof the Empire Transportation Company was owner, to carry a cargo of coal from Buffalo, N. Y., to West Superior, Wis., there to be delivered to itself as consignee. The bill of lading is as follows: "Shipped in good order and well conditioned, for account, and at the risk of whom it may concern, on board the W. H. Gilbert, whereof G. A. Minor is master, the following described property, to be delivered in like good condition as addressed in the margin, or to his or their assignees or consignees, upon paying the freight and charges as noted below, if cargo is delivered during the current season of navigation. If not so delivered, then the freight is to be paid at going rates when delivered (the dangers of navigation, fire, and collision excepted)." The Gilbert arrived at the dock of the consignee at West Superior on July 4, 1894; but that day being a holiday, according to custom, the work of unloading was not commenced. On the morning of July 5th the work of discharging the cargo was proceeded with, and continued throughout the whole day with a full crew; but on the 6th the men failed to appear for work. On the afternoon of July 5th a general strike was ordered, and took effect on all the coal docks at Duluth and Superior, as a result of which work on all docks was immediately suspended in both ports. No warning of the impending strike was given; no complaint was made or grievance claimed to exist; but the men quit work simultaneously on all the docks in both ports. On July 6th or 7th the following written notice was served on claimant's superintendent:

"At a joint meeting of the Duluth and Superior committee of the Coal Handlers' Protective Union the following scale of wages was agreed upon: 50c per hour for boatmen; $2.25 per day for hoisters; 20c per hour for dock hands; and that this scale be binding between employer and employés for one year from date, this 5th day of July, 1894. Ten hours to constitute a day's work. * * * Coal Handlers' Protective Union No. 6,263.

"American Federation of Labor, West Superior, Wis. [Seal.]"

The price theretofore paid boatmen was 40 cents an hour. Plenty of men were willing to work at that rate, and that was the amount paid when work was resumed.

The defendant, with all other dock owners, refused to accede to this demand, and attempted to hire men outside, in order to resume operations, but was unable to do so with any practical result by reason of threats and intimidation on the part of the strikers, who made a cordon round the docks, and kept men from going to work. The docks were then guarded by sheriffs and policemen furnished by the authorities, but even with this protection the men were afraid to hire out, for fear of violence, and many of them quit work by reason thereof. The work of unloading was suspended from the 6th to the 13th of July, inclusive. July 14th it was resumed; the vessel cleared on the 17th; and it is for this delay that the libel is filed.

Hollenbeck & Spencer, for libelants.
Boardman & Boutelle, for claimant.

NELSON, District Judge (after stating the facts). When the bill of lading mentions nothing about demurrage, the acceptance of the cargo is evidence of an agreement by the consignees to pay demurrage, as well as the freight; and when it specifies no particular time to be allowed the consignee for discharging the cargo, and no lay days are mentioned, the unloading must be done with reasonable diligence on the arrival of the vessel, according to the custom of the port, or damages can be recovered for detention of the vessel against the consignee. Liability for demurrage does not exist in the absence of an express contract, unless such demurrage is caused by the negligence or fault of the consignee. The consignee is entitled to a reasonable time to unload, taking into consideration the custom of the port and all surrounding circumstances; and what is a reasonable time depends on such surrounding facts and circumstances. Any improper detention of the vessel is demurrage, and liability for the same is only a reward to the vessel in compensation for the earnings she is improperly caused to lose. Where the consignee, as in this case, is the freighter and owner of the cargo, there can be no doubt of his liability for unnecessary detention of the vessel in unloading. Sprague v. West, Abb. Adm. 518, Fed. Cas. No. 13,255; Holt, Shipp. pt. 3, c. 1, § 25.

Certain facts stand out and cannot be disputed. The consignee, on the arrival of the vessel at the dock, proceeded to unload her cargo with all reasonable dispatch, when, without warning and without fault of the consignee, the men in a body, on the 6th of July, refused to work. An ultimatum was then presented by the strikers to the effect that unless 50 instead of 40 cents per hour was paid, and unless an agreement to pay that rate for a year was entered into by all the dock owners in the two ports, they would not resume work. Not only did they not work, but by threats and intimidation they stopped those who were willing to do so. It was not a mere question of paying 50 cents an hour for unloading this boat, for this demand was coupled with another that these rates should be kept up for a year, and that every dock owner in Superior and Duluth should become a party to the contract before any boat would be unloaded. On these demands being refused, threats, intimidation, and coercion were resorted to by the strikers, in face of the fact that plenty of men were willing and anxious to work at the old rate. Under these circumstances, it cannot be said that the claimant was bound to accede to the unjust and unreasonable demands of

the strikers, and bind itself to pay for a whole year wages largely in excess of the going rates.    There is no doubt but that sufficient men could have been procured to unload the boat but for these threats and intimidations.    I think that the defendant used reasonable and proper diligence to unload the boat, under all the circumstances of the case, and that the libelant cannot recover for the detention that occurred.

The case of Brown v. Certain Tons of Coal, 34 Fed. 913, strenuously relied upon, is perhaps the strongest case cited by libelants.    In that case the company was paying 40 cents, and the men demanded 50 cents, an hour, and would have gone to work had they been paid the latter amount.    The court said:

"He [the consignee] higgled over a little difference of ten cents an hour to these employés, and permitted the vessel to lie there until he could coerce the employés to accept forty instead of fifty cents, thereby attempting to save himself a mere pittance, while subjecting others to serious loss and damages."

Here the evidence shows a very different state of affairs, which it is not necessary to recapitulate.

A decree must be entered for the defendant, with costs.

The facts in the case of the steamer Gratwick No. 2 being the same as in this case, a decree for defendant, with costs, will also be entered therein.